Case number 23-5765, Mollie Slaybaugh et al. versus Rutherford County TN et al. Arguments not to exceed 15 minutes per side. Mr. Redfern, you may proceed for the appellants. Thank you. Good morning, your honors. May it please the court. I'm Jeffrey Redfern from the Institute for Justice here on behalf of the Slaybaugh appellants. The plain text of the Just Compensation Clause contains no exemptions for the police power, for public necessity, or for damage done by law enforcement. And the government bears the burden of establishing that any such exception is grounded in our nation's history and tradition. But the government hasn't even tried to meet that burden. Instead it asks this court to blindly follow decisions from other jurisdictions, decisions whose reasoning the government isn't even really defending. They seem to acknowledge now that the police power is not exempt from the Just Compensation Clause. They're arguing for a different exemption, a law enforcement exemption. But they don't tell us where it comes from. It's not in the text, it's not in historical record, and it's nowhere in Supreme Court precedent. That's just not good enough, and that's really enough to decide this case. So suppose I think it is in the historical record. Suppose I think that there's like a fair amount of rules under the Fourth Amendment on when officers can do damage to a house in order to enter to affect a warrant, an arrest warrant or a search warrant. It dates back, I mean the knock and announce rule, I'm sure you know the knock and announce rule, grows out of pre-constitutional common law that suggests an officer should announce the officer's presence before the officer enters. But if the officer does that and nobody answers, the officer can break down the house to get in to affect the arrest or the search. Now if that's the law and if lots of cases, trespass actions against the officers, failed because the officers respected that rule, why don't we think that that is a history that matters to whether we consider it as taking? Well because whether the officer is a trespasser and whether the government's action is lawful doesn't tell us anything about whether the government itself owes compensation. And the Supreme Court in Lingle said that the question whether the government is acting lawfully is logically prior to and distinct from whether otherwise lawful action has affected a taking. We know from sheets... Don't you think though, I thought you might say that, and so we have this history of officers breaking down doors and only getting compensation under the Fourth Amendment say if they violate the knock-and-announce rule. But I have found not a single case that has ever suggested that it qualified as a taking when the officer engaged in this damage. And if your rule was correct, I would think we would find some case law until... I mean there's case law recent times, but I'm talking about historically. And I mean you haven't pointed us to anything. No, and to be clear, I think that the absence of anything either way cuts in our favor because of the government's burden. But I don't think it's actually surprising that we don't have those cases. We didn't have professional police forces at the time of the founding. We had the knock-and-announce rule, which meant that not breaking down a door would have been the exception, not the norm. Usually the person who's not opening up is going to be the owner, so you're not going to have an innocent owner claim there. And we're not contending that somebody who is refusing this lawful demand would then have a takings claim. And we're dealing with pretty minor damage. So in those edge cases where you have a totally innocent owner, you have damage to their property, which is pretty minor, if they decided to make a dispute out of it, we just don't know what happened. And I think it's entirely plausible that those people would have gotten compensated because even today in these massive SWAT destruction cases, in our experience, a lot of these people are getting compensated voluntarily. We cited some examples of this in our brief. And whether the government thinks it's required to or whether they just think clearly this is the right thing to do because we trashed this person's house and they didn't do anything wrong, that's happening. It very well might have been happening then, but we just don't know. It wasn't a lot of damage. It hasn't produced a record. And absent that kind of a record, I think we win here because the plain text doesn't contain any law enforcement exception. But do you think, it's not obvious to me that the plain text of the takings clause would cover damage. So it says, nor shall private property be taken without justice. Do you think taken includes damage? I mean, I agree with you under the dam cases, it's been expanded to that. But it's not obvious under the plain face of the text like it may have been in Bruin. So why do we think the silence should cut in your favor rather than the government's? Or what's the way to resolve it when I don't necessarily think the text unambiguously covers the action at issue? Well, I think that now that the Supreme Court has established that damage is clearly covered, that this law enforcement exception, if it applies, it would cut across damage and seizures and takings, the more traditional appropriation of property. But I think that the early fire cases are also supportive here. We've got cases from Georgia, from New Jersey, New York, South Carolina. And these are cases where, you know, houses are being torn down or the cargo of a ship is being destroyed. It's the kind of thing where we do get a record because there was a lot more loss at stake and it was worth litigating. And every court to confront the interplay between taking and destruction, including destruction for public necessity, concluded that the takings clause trumps. That public necessity is a tort defense, it means that the individual isn't liable, but the government still is. It isn't until much later that we get, you know, the Iowa Supreme Court suggesting that it's a actually a defense against governmental liability. And I think that's just consistent with the theory of the takings clause. The whole point of necessity is that this is important, it's lawful, but the theory of the takings clause is that sometimes the government has to take individual's property and if it's doing it for a public good, that's something that should be shared across society as a whole. I think that all of these decisions that cut against us, they share the same premise that basically if the government's doing something lawful or it's doing something really important or something reasonable, then it wouldn't be fair to the government to make them pay. But that reasoning is just foreign to the takings clause. The question is whether individuals are shouldering burdens that, in fairness and justice, should be borne by society as a whole. So why does Cedar Point list exceptions at all? So I think that Cedar Point... Cedar Point would say there should have been no exceptions at Cedar Point. That part of the opinion is just wrong. No, I think that the Cedar Point dicta is unquestionably correct, but you have to read it in context of what the court was talking about. The court was very clear, was talking about a particular stick in the bundle, the right to exclude. And we agree that a one-time lawful search doesn't appropriate the owner's right to exclude. It's not the equivalent of an easement. But I actually think that if you had a Fourth Amendment warrant that said, we need to install a listening post for the next year because there's a drug house next door, and we're just going to set up shop in your upstairs bedroom, I think that probably would give rise to a takings claim, even if it was a lawful Fourth Amendment search. Why wouldn't that be a question under the Fourth Amendment about the scope of the search or the scope of the warrant or whether it was reasonable or not? Why would it be a takings? I mean, it seems like this area of the law is, you know, and in fact, Cedar Point says arrest and search. It cites the restatement. I mean, that seems like we're in that arena. We're not in the, you know, other arena, the Fifth Amendment arena. If it's an unreasonable search, you'll get money. You sue under 1983. Two points, Your Honor. First, I think there's a real problem with looking at this through the Fourth Amendment lens because that stops the government from doing the thing it's trying to do. It's saying, look, you want to do this search. It's really important. This is a criminal enterprise that we have to take down, but we're not going to let you do it. Your hands are tied. The Fifth Amendment approach says the government can do it. It's just that if it's imposing these huge costs on innocent third parties, it has to internalize those and spread them across society. And with regard to Cedar Point, one other thing I want to point out, the dissent made a big deal of the fact that there was no damage caused in this case. I think, really, that was a case about easements and about physical intrusion, and just the bare fact that a police officer is entering your property one time, I agree, that is not a taking. But they weren't talking about damage, and the dissent implied that if there had been damage, they actually would have been with the majority in this case. So I think that putting a lot of weight on that dicta that didn't do any good, I would say that it includes situations where, like in LEC, they literally knocked down the walls of the house and it had to be condemned. The idea that that sort of exception was somehow implicit in the words of the Fifth Amendment, when we didn't have police, we didn't have SWAT teams, I think that that kind of damage would have been incomprehensible to the founders, and the idea that this would somehow not be compensable. I have a question about the facts of the case, and it may have nothing to do with what we decide, but what happened to the father during all this? Is there anything in the record as to the father, was he not there, present at the home? Mr. Slabel was not in town at the time. He was not in town. Okay. Thank you. Does your rule matter, is it relevant at all whether the person is, who owns the house, is ultimately arrested in the house, or, you know, is guilty or not?  We are not suggesting that someone who barricades himself inside his own house would have a takings claim for the damage done to, I mean, the public good is getting you yourself off the street, you wouldn't really have a claim. And is it undisputed that the parents did not have any knowledge? Absolutely. We're hearing a motion to dismiss. We're not afraid of what the record will show, and, you know, if the government wants to try to prove that, they're free to, but they won't. Logically, why, I understand equitably why you want to draw that distinction, because it seems quite inequitable to pay the criminal, but logically it's not clear to me why you forfeit your taking clause rights in the way you are Suppose they violate the knock-and-announce rule, and it's a defendant who is clearly guilty. That defendant could seek damages for the destruction to the door, I think. And so I don't understand the legal distinction. Like, legally, why does it matter? So, that seems like a bit of an edge case. I think that would probably be a Fourth Amendment claim, and, you know, we would look at that through the lens of the immediate existence. But why? Why would the takings clause have this carve-out for when it is the criminal suspect's own house? I think that we could look at it through the lens of unclean hands. We could also look at it through the lens of cases like Muggler v. Kansas, where someone is misusing their own property in a way that harms their community, and that if the police stop you from doing that, you wouldn't have a claim. I think you could also just put weight on the word just and just compensation. I don't think anyone would suggest that it's just to claim compensation from the public for expenses incurred in taking you, yourself, to justice. I suppose, but, you know, the way I think of it, I agree with you that history is quite significant, but I would have thought that the easy way out is just to rely on the traditional rule that it's a privileged encounter. The problem for you is that rule just goes too broad, it seems to me, because it would include both the criminal suspect and the innocent owner. So that, I mean, that's what I thought the court was getting at in Cedar Point, but for what it's worth. I do think that the explanation for the history here is just that this is not something that would have been widespread or there wouldn't have been much damage at the time. And ultimately, it is the government's burden here. If the history is ambiguous, you know, the tie has to go to the text and there's certainly nothing about law enforcement. I think that these early necessity cases, the fact that St. George Tucker says, we were talking about the Revolutionary War here. If that isn't exempt, then it's hard to imagine why this kind of routine law enforcement activity would be exempt. One last question, if you don't mind. There's a lot of statutes that now authorize this, and I think they date back quite a ways. Like the federal statute says, the officer may break open any outer or inner door or window of a house or any part of a house or anything therein to execute a search warrant if, after notice of authority and purpose, he has refused admittance. So I suppose you're going to say that that statute is unconstitutional to the extent it doesn't authorize just compensation for the destruction? No, I wouldn't say that every statute that allows people to do things that could result in a taking is unconstitutional because it's not provided for. You know, we have the Little and Big Tucker Acts, and I think that that's the right way to address those. I don't think it needs to be explicitly in every individual statute. I'll ask the question on your rebuttal. Never mind. Thank you. Good morning, Your Honors. Nick Christensen here for the Appellees, Rutherford County and the Rutherford County Sheriff's Department. May it please the Court. You asked questions about tradition. Dating back to the Mugler case in 1887, there was the establishment of this notion, this dichotomy between eminent domain and police power. So I think at least for the last few hundred years, couple hundred years, there has been a distinction and furtherance of a police power exempt from the Takings Clause. I've never understood this distinction, so maybe you can help. I thought the police power was all of the power that the state governments had, and so the eminent domain power would be part of the police power. If they weren't exercising the police power, then their actions would be unconstitutional. I'm not aware of a case that answers your question, Your Honor. I do know that the Supreme Court, since Mugler and in other instances, has relied upon it. In fact, this court in Ostapow relied upon the distinction between the two. What is the police power? The police power is the ability of the government to take action to protect the public health, safety, and well-being. So if they take your land to build a park, that's for the well-being? That's not a taking? I would agree that it is for the well-being for the establishment of a public use in that instance. If we look at, for example, this notion of flooding cases, which has been deemed, and I would contend that flooding cases pose a distinct difference in the fact that there is an appropriation of land and this notion that we're going to deem that a taking, but I'm not aware of any case where a flooding was done to prevent the death of people. That's what we're talking about here and why it is not a public use and instead it is for the public benefit because we're in the arena of having split-seconds decisions having to be made by law enforcement to prevent the death of people. And that's exactly what we contend happened here. So, I mean, I think their point would be those are all great arguments for why the conduct is lawful, but the takings clause presumes that the conduct is lawful because if it isn't, then you can't engage in the conduct. And all the takings clause says is that for lawful conduct where you take somebody's property, you have to pay compensation for it. And as your Honor pointed out earlier, it doesn't say anything about damage and there are state constitutions which specifically have language that talk about damage. So, I think that when we're talking about that, it would be extending the text of the Constitution and if there wants to be an amendment to the U.S. Constitution under the Fifth Amendment to include a specific damaging clause, then that can be done, but that is not done in this case and certainly they brought a claim under the Tennessee Constitution which mirrors the U.S. Constitution and does not contain a damaging clause. Do you think that ship has sailed though? Because I would have thought the dam cases would have fit within that bill because it was damage to property from the flooding. Yeah, so again, I think I would contend that flooding cases are different because there is a lot of causation, complex causation issues, particularly and appellants rely on the Arkansas game and fish case which extended this notion of a taking for intermittent or temporary flooding and they established a multi-factor factually intensive test because if it's flooding that's occurring over intermittent periods of time, we're not sure if it's the government that's causing it or elsewhere. And we believe that such factually intensive ad hoc inquiries are simply not appropriate and oddly, I'm not really sure what the appellants are proposing here. It seems like they're proposing a strict liability rule. And just to give an example, in this case, let me back up, it seems like they're proposing a strict liability rule yet they want to have a factually intensive inquiry of whether the action was intentional or foreseeable. But when you apply that test, the facts of this case is they want to or, for example, in a hypothetical, say Mr. Kahn who was in the house tried to exit the house in his mother's vehicle and they pursued him down the road. And in the process, they went over yards, other people's houses, mailboxes and fences. Are those people entitled to compensation by the government because of Mr. Kahn's action in taking the vehicle? And take it a step further, what if they have to conduct a pit maneuver or that they have to lay down spike strips and Ms. Slabaugh's car is damaged as a result of that? Are we saying that because of that and the prevention of a safety hazard that we're going to have to pay Ms. Slabaugh for her vehicle? So I think if you were to apply their rule, it really is akin to a strict liability rule that whenever the government, through its law enforcement activities, take action pursuant to the effectuation and apprehension of a suspect, they're going to be strictly liable to pay compensation. And I would urge this court, or rather caution the court, not to adopt such a rule. There are other circuits that have addressed this case, this fact pattern, specifically the Lett case out of the Tenth Circuit. There's a federal claims case, Bachman, which also dealt with this directly on point. And one distinction that they, or one point that they made, which I think is very important here and which the Ostapow Court in 2020, this court found, was that there's no principal distinction between the seizure of property that's been criminal activity and damage done by law enforcement that is incidental to apprehending an uncooperative suspect. In this case, the house is being used in furtherance of criminal activity. It's essentially being used as a shield to prevent law enforcement from being able to apprehend the suspect. And that's an important distinction because I think the case law is very clear that civil forfeiture laws and the seizure of property that's being used in furtherance of criminal activity is not a taking. And that's well established. And in Ostapow in 2020... Civil forfeiture laws then would allow you to... Are you suggesting that on the pleadings of this case you could have taken the Slabaw's house? You could have found it forfeited because it was used... No, Your Honor. It strikes me as quite an aggressive reading. I agree. I guess the analogy I'm trying to make is the case law is very settled and in this circuit it's very settled through Ostapow that civil forfeiture laws are quasi-criminal in nature and they don't constitute a taking. And if you affirm the district court, you are only taking maybe a pinky toe farther and extending that same logic to suggest that there is similarly an exception to law enforcement when they are causing damage in the apprehension of a criminal suspect. So I just put that out there to say that the case law in this circuit has already established the exception for forfeiture and seizure of property pursuant to criminal activity. And in this case, it's not very different. So on the whole, the activities of law enforcement in causing damage fall within the same gambit and umbrella of the categorical exception that this court's already found with respect to civil forfeiture. What do you do... I agree with your friend on the other side that there are a ton of cases denying tort relief on trespass claims when officers do damage to homes. But that just may suggest that the entry was lawful. But there's a complete absence from both sides' briefing on the next step about whether the government owed compensation for the damage as a taking. And I think your friend on the other side would say, under Bruin's logic, the ambiguity harms you, not the plaintiff. And I'm curious to get your reaction about why we shouldn't hold the lack of case law or the ambiguity on no cases suggesting this wasn't a taking against the government. I hadn't really thought about that, Your Honor. I'll be candid with you. It wasn't in our briefs, and I'm not sure that either side... I cited Bruin. At least I thought they did. Well, Your Honor, I guess I'm thinking of forward-looking here, and this might go to maybe a public policy argument, because if the court were to accept the appellant's proposed rule, I believe it could send a shockwave across the nation. These law enforcement officers, they go to CLEs, the sheriff's deputies, the police chiefs, they all try to be up to speed on the law. And if they're going to be taught that, in cases like this, that there's automatically going to be compensation going to be provided for damages caused in the execution of their duties, there could be hesitancy in their actions, in their split-second decisions, which really shouldn't impede their ability to try and save lives and care for the safety of others. So I guess, number one, policy arguments don't do much for me, I would say, on this ambiguity question. And number two, I think the response on the other side would be that's precisely why the officers themselves are not personally liable. They're not going to be on the hook. So the question is going to be, is the government on the hook? I understand that very academic point, but it's not real life, and it's not practical. And I can foresee a situation where there are supervisors involved and there are people running for elections, and getting slapped with a huge lawsuit, even though it's against the government, is worrisome. And I'll also note this, there are very good plaintiff's lawyers out there. My colleague over here is one of them. And I would imagine that simply by stating that, though, a lawsuit that would be filed would not only be filed against the government, but it would also be filed against the individual officers involved. And it would be up to them to hire lawyers and raise certain immunity or other defenses, which, as law typically goes and progresses, there could be carve-outs and exceptions made to that immunity there. And so the trespass argument, I understand it, but I don't want to get us lost in a super hyper-technical academic idea, because these are real human beings on the ground that are trying to do their job. So I guess, is that all you got? So the lack of ambiguity, or excuse me, the ambiguity in the case law and whether this is a taking, your response is it will just upset too many settled expectations. No, I don't think that there's an ambiguity in this, because we already have Tenth Circuit precedent in LEC that specifically found that in instances like this, it's not a taking. And they cited other Supreme Court cases such as Bennis. That was a case involving a marital car that the husband was using to further some prostitution and sexual activity. And the court made the distinction there that there is this idea of police power and eminent domain, but when it comes to civil forfeiture laws, those are exempt from the takings clause. Now, I know that we don't have a Supreme Court case on direct point here, and this may be very well one that goes up, and we have to argue that. But on the whole, we at least have Tenth Circuit precedent, and other, I think the Ninth Circuit in Johnson, that is not terribly directly, it is close on point, but it had to deal with a, I see that my time is up, but I can finish my point if that's okay. Yeah, so in Johnson, a landlord had some property, and the tenant, I don't know if you all have seen the documentary Making a Murderer, Stephen Avery was accused of killing a couple people, and police went in and trashed the landlord's house, where Mr. Avery was staying, and effectuating a search warrant. And in that case, they similarly found, just like Leck did, that actions taken in furtherance of effectuating a search warrant, that the damages caused to the landlord's property was not a taking under the Fifth Amendment. So you have all these cases in the circuits that are relying on Supreme Court precedent that make this distinction between eminent domain and police power, and specifically, as we're arguing in this case, and how the district court found, was that when it comes, I'm not arguing for a categorical police power exception, but I'm saying in this narrow, nuanced circumstance of police effectuating warrants and causing damage, the case law is clear that it's not a taking. Thank you, Your Honor. Your Honor, good morning. Robert Burns, the Nashville Bar. I'm kind of here to play clean up, I guess. Good arguments on both sides, but obviously on behalf of the town of Smyrna, I would reiterate Mr. Christianson's point, and incorporate the same on behalf of my client. Respectfully, I would suggest, based upon the case law that we know exists and how courts have looked at the issue, and the issues that the sleigh balls have raised in this litigation, that it is not as close an issue as what plaintiffs would have you suggest. There is not an epidemic of claims like this. This court is not facing a rush or a crisis of having to decide issues related to takings because of an influx of many, many lawsuits. Respectfully, I would suggest that this is something of a niche issue, and if you put what the record is into context, what the plaintiffs are asking for and what the precedent is, and of course I do not need to repeat that there is value and logic in precedent, but respectfully what the plaintiffs are asking here for is akin somewhat to If you take the plaintiff's position in this case, I would suggest that you were going to upset and undo some very long, well-established history of statutory authority in the state of Tennessee. As Mr. Christianson alluded to, what are now common, well-known, well-accepted, and well-trained throughout the country law enforcement practices. Tennessee has a statute, it's TCA 40-7-107, and in its title it is called Officer Denies Admittance, and it uses the words breaking in. That statute in part reads to make an arrest either with or without a warrant. The officer may break open any outer or inner door or window of a dwelling house. Judge Murphy, to pick up on the historical issues, historical context that you've alluded to, that statute in Tennessee was enacted in 1858. That's 166 years ago, and in that time frame there have been only seven cases that have even addressed or discussed the statute, and none of those have even given a whiff or a suggestion or a hint of the issues that we have before us today about compensation to a property owner. If this court were to reverse and not affirm, it opens up what I would suggest would be a Pandora's box of issues. It would force Smyrna and Rutherford County to revamp, redo, maybe recreate, and reinvent how it trains its officers. There's been discussion this morning about knock and announce or knock and enter. It would completely undo that area of law enforcement practice. To close out my argument, if I can make one final point, there's been an allusion, not an allusion, but there's been a reference to individual liability, and we understand that is not a claim that is before us today. But to echo what Mr. Christensen just said, I could foresee easily in a couple of years that we're back up here having to consider whether individual officers can be liable under this same type of scenario. Police officers in today's day and age have enough on them, and they do not need to be asked to have to consider whether their actions, which for centuries now have been authorized and supported by case law and statutes, whether they have to stop and think about the ramifications of breaking a window or a door. I would ask that you affirm. Thank you. Four quick points, Your Honors. Forfeiture is a formal proceeding that transfers title. In Venice, the Supreme Court emphasized that, said as long as it complies with due process, you don't have a takings claim on the back end. Justice Thomas in concurrence emphasized that forfeiture, including innocent owner forfeiture, had a long history at common law. That's the kind of history that's absent for a law enforcement exception to takings. As for the police power, Midkiff says that public use is coterminous with the police power. It's true that in the 19th century there was this. Can I ask you just to clarify? Yes. If all they had done here, forget the tear gas, all this, if they had just broken down the door, would there be a claim for the cost of the door under the takings clause? I think so, but I acknowledge that. So there would be no arrest privilege at all to try? There's a privilege for the officers. They acted lawfully, and they can't be held liable. But I acknowledge that there is at least history at common law. There was knowledge that this kind of damage happened. So if the court wants to flag the mere breaking of doors as something that might possibly be accepted, we'd be comfortable with leaving that for a future case. I think it's quite clear, though, that there was no concept of law enforcement causing this kind of damage. What if they conduct a search that's reasonable under the Fourth Amendment, and there's a warrant, and it is within the scope of the search? So in other words, the search warrant says reasonably there are drugs in the house hidden in the couch or something, and they rip up the couch, and it's a reasonable search. Could that be a taking? I think that's a closer call if they had probable cause to think that the owner of the couch was involved here. I think that's pretty far afield from what we have here. I understand that, but we have to make a rule that covers everything, not just your case. You understand that, right? Yes. So how do I distinguish between the door, and I do a couple of other things when I'm going in, which I'm privileged to do, versus something else? I mean, do they pay or not? I mean, and your friend had some other hypotheticals. What if he had taken his mother's car, and he gets run off the road? Is that she's innocent, right? So the cost of the car? I don't think so. If he's the one who runs it off the road, I don't think so. If there's no comedy, like she's not loaning it to him so that he can escape or something. There are certainly going to be facts and circumstances that could make these closer cases, but I think that's pretty far afield from the basic question of a law enforcement exception. Your test of compensable taking turns on culpability of the claimant and amount of damage beyond what you normally have for a entering of a home. Is that what you're, like the two factors you're having to have? At least if we're beyond that. I think the Supreme Court held in Kress and in Cosby that if the damage is de minimis, then that's not a takings claim. Anything more than de minimis, you would say, would satisfy the amount requirement? I believe so. And what about culpability? I think that at the very least in a situation where the property owner is indisputably innocent, not in any way at fault, that's a claim. I think that where we draw the line is something that we can figure out in a future case. So to take your opposing counsel's point, suppose that Conn had gotten in the car and gone through the neighborhood, like a movie, bashing cars, tearing up lawns, whatever. Would all those homeowners have claims against the government under your theory? I don't think so, Your Honor. I think the Federal Circuit has a lot of case law about what foreseeability means, and it basically means that it's not just that this could have been the result, but it's that it was the probable result. Like you were doing something that you should have known was going to result in this kind of damage. So it's almost intentional under their case law, and we don't have an issue with that. At bottom, though, I think what I'm hearing from both of my friends here is that there should be an exception based on policy, and I just don't think that the argument holds up. The idea of deterrence here, we're talking about people who are not going to be held liable, and if we assume that police officers are people of goodwill, if anything, I think they're more likely to hesitate when they know that causing damage could visit financial ruin on totally innocent people. And finally, this isn't a ton of damage, but someone's paying for it. So this isn't, you know, we're not talking about speculative, you know, mental anguish damage. We're talking about physical damage that we can easily quantify. We know who the plaintiffs are, and either they're paying for it or all of society is. I don't think that's a hard call. The question I wanted to ask you when you first got up was, what about the YMCA case where you have the government going in and actually arguably protecting the homeowner from damage by getting rid of the rioters? Yes, so I think that's, I think that is correct. I think the YMCA case is very helpful to us because if there were a law enforcement exception, that would be a very easy way to have decided that case. But every opinion in that agreed that the reason there wasn't a claim was because they were trying to help the property owners. And the dissent even agreed with that legal premise. They just disagreed on the record, and they thought that the government had taken it for their own. So that wasn't, law enforcement exception wasn't argued in that case? I don't believe it was. It certainly wasn't the ground on which the case was decided. And then finally, I just want to say the Tennessee claim here, the district court erred by tying it to the federal claim. We argued that we win for the same reason, but Tennessee courts are not bound to interpret their constitution the way federal courts interpret the U.S. Constitution. As Judge Sutton says, civil rights plaintiffs get to take two free throws. And respectfully, if the court agrees with the government in this case, we would request that the Tennessee question be certified to the Tennessee Supreme Court so we can take that second free throw. Thank you. Thank you, counsel. Thank you to both sides. We'll take the matter under submission, and the clerk may call the next case.